UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUSTIN SHAUL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03962-JMS-TAB |
| ) | |
| HIBBARD, et al. ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Three defendants—Correctional Officer Hannah, Correctional Officer Wilson, and Misty Stamper—seek summary judgment on grounds that Plaintiff Justin Shaul failed to exhaust administrative remedies before filing this action. The undisputed facts show that these defendants are entitled to judgment as a matter of law.

**I. Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

In accordance with Local Rule 56-1(f), the Court assumes that facts properly supported by the movant are admitted without controversy unless the non-movant specifically disputes them.

Likewise, the Court assumes that facts asserted by the non-movant are true so long as they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(2).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movants, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Shaul. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he

2

ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Facts

The Court previously summarized the allegations underlying Mr. Shaul's amended complaint as follow:

> On April 23, 2019, Officer Hibbard attempted to kick open a door. The door flew open and struck Mr. Shaul, causing injuries to his head, mouth, jaw, and teeth. Officer Hibbard did not file an incident report or allow Mr. Shaul to receive treatment for his injuries.
>
> On April 28, Officer Hanna visited Mr. Shaul's cell and warned that pursuing the matter may result in him being removed from a prison program or moved to a different facility. Officer Hanna also failed to allow Mr. Shaul to receive treatment for his injuries. Officer Wilson visited Mr. Shaul's cell on June 20 and issued similar warnings.
>
> On July 25, 2019, Officer Wilson wrote Mr. Shaul up for a bogus conduct report, then told Ms. Stamper to remove Mr. Shaul from a prison program and move him to a different housing unit. Mr. Shaul filed grievances regarding his removal from the program and his housing unit transfer. Ms. Stamper denied the grievances on grounds that Mr. Shaul had been written up for four conduct violations, but in fact he had only been charged with one violation.

Dkt. 11 at 2.

The Indiana Department of Correction (IDOC) maintained an Offender Grievance Process (OGP) that provided opportunities for inmates to "resolve concerns and complaints relating to their conditions of confinement." Dkt. 33-2 at § I. Mr. Shaul does not dispute that the issues underlying his amended complaint—assault by an officer, denial of medical care, threats, and retaliation— fall within the scope of the OGP.

To exhaust the remedies available through the OGP, an inmate must complete four steps. *See id.* at §§ X–XIII. Mr. Shaul does not contend that he ever proceeded beyond the second step.

An inmate must first attempt to resolve his concern informally by discussing it "with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs." *Id.* at § X. An inmate must document his attempt to resolve the complaint informally. *Id.* He may do so by completing a "Request for Interview" form. *Id.*

If the inmate is unable to achieve a satisfactory informal resolution, he must proceed to the second step and submit a formal grievance. *Id.* at § XI. A formal grievance must be presented on State Form 45471 within ten business days of the incident. *Id.*

Between April and August of 2019, Mr. Shaul submitted numerous informal grievances regarding the issues raised in his amended complaint. *See* dkt. 2-1; dkt. 54 at 34–43. However, he only ever submitted one formal grievance. Dkt. 2-1 at 2. On May 20, 2019, Mr. Shaul submitted a formal grievance stating:

> I am writing this in reguard to the incident of Mrs Hibbard asulting me & the fact she never replied to the Informal Grievance
>
> [. . .]
>
> I am asking that she be at least moved from this dorm so she cannot mentally or pspholigically torture me any longer or retaliate.

*Id.* (errors in original). Mr. Shaul does not assert that he ever submitted a formal grievance alleging that any prison employee threatened him, retaliated against him, or denied him medical care.

Mr. Shaul states that he never received a written copy of the OGP. Dkt. 47 at 34. Instead, he was provided with an inmate handbook that referred briefly to the OGP. *Id.* In its entirety, the portion of the handbook referring to the OGP states:

> The Department has a way for you to bring issues concerning you or complaints about things affecting you to staff. The way to bring these concerns or complaints to staff is through the Offender Grievance Process. The Offender Grievance Process will provide a way for you to express your concerns and complaints and have them answered by staff. The use of the Offender Grievance Process is not to take the place of you talking to staff to try to resolve your problems or concerns. You and the staff you have contact with are to work together to resolve your concerns as quickly as possible. Whenever possible, your concerns should be answered by staff without having to use the formal written grievance.
>
> No one is to do anything against you for using the Offender Grievance Process. If you misuse the Offender Grievance Process, the number of grievances you may have in the process may be limited.
>
> REFERENCE: Policy 00-02-301, "Offender Grievance Process"

*Id.* at 27.

The handbook Mr. Shaul received includes seven overarching instructions. *Id.* at 5. Two are relevant to the question of whether the OGP was available to him:

> 3. Every offender is to follow all Department and facility rules and procedures. If an offender does not know or understand a rule or procedure, it is the offender's duty to talk to staff that can answer questions and explain the rules and procedures. Lack of knowledge or understanding of rules and procedures is not an excuse for violating them.
>
>    [. . .]
>
> 6. At the end of each section there is a reference that lists a Department policy and procedure that you can review at the facilities. You should review these policies and procedures and if you have any questions, staff may be able to answer your questions.

*Id.*

Mr. Shaul does not assert that he ever requested a copy of the OGP from any staff member. He states that he "had some help from the law library." Dkt. 54 at 32. It is not clear what that help entailed. Regardless, Mr. Shaul does not assert that any member of the prison staff refused a request for a copy of the OGP.

5

### III. Analysis

There is no factual dispute that Mr. Shaul did not exhaust the OGP before filing this action. The defendants' motion hinges instead on whether the OGP was "available" to Mr. Shaul as an avenue for administrative relief for the issues underlying his amended complaint. Construed in Mr. Shaul's favor, the evidence before the Court shows that the OGP was available to Mr. Shaul.

There is no dispute that the OGP was in effect in the spring and summer of 2019, and there is no dispute that Mr. Shaul knew about the OGP. Mr. Shaul states that he received a copy of the inmate handbook, which informed him of the OGP. Dkt. 47 at 27. Moreover, Mr. Shaul submitted informal grievances and even one formal grievance as required by the OGP. Dkt. 2-1; dkt. 54 at 34–43.

The single formal grievance Mr. Shaul filed did not exhaust the OGP with respect to his claims against Defendants Hannah, Wilson, and Stamper. To satisfy the PLRA, a prisoner must "alert the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The PLRA imposes this requirement because its purpose is to give the prison "an opportunity to correct its own mistakes before suit is filed against it in federal court." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (citing *Woodford*, 548 U.S. at 89). The one formal grievance Mr. Shaul filed complained of Defendant Hibbard's use of force—not of retaliation, threats, or denial of medical attention. That formal grievance therefore could not have fairly alerted the prison staff to the claims Mr. Shaul asserts against these defendants. *See, e.g.*, *Schillinger*, 954 F.3d at 996 ("[T]here are no allegations that any prison guards—even unnamed guards—had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it. . . . Instead, Schillinger's grievance raised two entirely different problems: no guards were nearby when the attack occurred, and the responding guards took too long to come

to his aid."); *Northern v. Dobbert*, 816 F. App'x 11, 14 (7th Cir. 2020) ("[T]he allegations in the August complaint were insufficient to put the prison on notice that Northern sought redress for inadequate care of his post-surgical wound. . . . Northern's four-page complaint mentioned wound care only once and only to note that, in an act of retaliation for not signing a refusal-of-care form, a nurse did not change his surgical dressings on two days in May 2013.").

Mr. Shaul states that he was never given a copy of the OGP or "personally instructed on how to obtain" it. Dkt. 47 at 34. But Mr. Shaul does not dispute that he knew the OGP existed or that he was obligated to comply with it. *See id.* at 27. He does not allege that he ever asked a staff member for a copy of the OGP or asked where he could obtain one—even though the handbook instructed him to do so. *Id.* at 5.

Mr. Shaul states that he was instructed, contrary to the OGP, to submit informal grievances to the staff members about whose conduct he wished to complain. Dkt. 54 at 33. But those instructions are consistent with the OGP, which states that a prisoner must discuss his concern "with the staff member responsible for the situation." Dkt. 33-2 at § X.

As a final matter, the Court notes that Mr. Shaul alleges in his amended complaint that some of the defendants either retaliated against him for pursuing grievances or threatened retaliation if he pursued grievances. Mr. Shaul did not state those allegations under penalty of perjury, so they are not admissible evidence for purposes of the defendants' summary judgment motion. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) ("[A] plaintiff may not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment. . . . [H]owever . . . a verified complaint—signed, sworn, and submitted under penalty of perjury—can be considered 'affidavit material' . . . .").

7

Even accepting those allegations as true, however, they do not raise a genuine dispute as to the availability of the OGP. "A remedy is not available . . . to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Mr. Shaul does not allege—in his complaint or in his summary judgment materials, sworn or unsworn—that threats prevented him from utilizing the OGP. Indeed, his submissions show the opposite. Mr. Shaul pursued numerous grievances regarding the allegations underlying his amended complaint. He simply did not pursue them in the manner required by the OGP. Mr. Shaul did not utilize the correct grievance process, but the defendants did not make that process unavailable to him.

In sum, the evidence before the Court does not show that the OGP was a "dead end," or that it was "opaque," or that prison officials "thwarted" Mr. Shaul's good-faith efforts to exhaust the process. *Ross,* 136 S. Ct. at 1859, 1862. Rather, the facts show that Mr. Shaul knew the OGP existed, that he did not learn (or seek to learn) its requirements, and that he did not complete the process it set out. The defendants have carried their burden of establishing that administrative remedies were available and that Mr. Shaul failed to pursue them. *See Thomas*, 787 F.3d at 847.

## IV. Conclusion

The defendants' motion for summary judgment, dkt. [33], is **granted**. All claims against Defendants Hannah, Wilson, and Stamper are **dismissed without prejudice**. No partial final judgment shall enter. However, the **clerk is directed** to terminate defendants Hannah, Wilson, and Stamper as defendants.

**IT IS SO ORDERED.**

Date: 2/17/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JUSTIN SHAUL
251507
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov